FILED IN CHAMBERS
U.S.D.C. Atlanta

SEP 0 4 2007

JAMES N. HATTEN, Clerk
By: _____
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

BIOMEDICAL DISPOSAL, INC.,

       Plaintiff,

v.

MEDIQ/PRN LIFE SUPPORT
SERVICES, INC.,

       Defendant.

CIVIL ACTION NO.

1:02-CV-1927-JEC

**ORDER & OPINION**

This case is presently before the Court on plaintiff's Renewed Motion to Disallow Costs [168] and defendant's Renewed Motion for Attorney's Fees [169]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that plaintiff's Renewed Motion to Disallow Costs [168] should be **GRANTED in part** and **DENIED in part** and defendant's Renewed Motion for Attorney's Fees [169] should be **DENIED**.

**BACKGROUND**

Plaintiff is a start-up company that manufactures medical products. (Order [139] at 2.) Defendant is a medical products distributor that provides rental equipment to healthcare providers. (*Id.*) In July, 2001, plaintiff and defendant entered into a contract concerning one of plaintiff's medical products--the Sharp-x needle destruction system. (*Id.*) Pursuant to the contract, defendant

AO 72A
(Rev.8/82)

became plaintiff's exclusive rental representative for the Sharp-x system, and the parties agreed to  share the revenue generated from any rentals.  (*Id.*)

The Sharp-x system did not perform well in the marketplace. (*Id.* at 6.)   Sales of the Sharp-x product were dismal from the beginning, and never improved.   (Order [139] at 6-7.)   Defendant claimed that the market rejected the Sharp-x system because of non-compliance with OSHA standards and unfavorable reviews by medical employees.  (*Id.* at 6.)  Plaintiff, on the other hand, attributed the poor (or nonexistent) sales of the Sharp-x system to defendant's failure to meet its contractual obligation to place the product in hospitals and other healthcare facilities.  (*Id.* at 7.)

Plaintiff filed this suit in the Fulton County Superior Court in June, 2002.  (*See generally* Compl. [1].)   All of the plaintiff's claims arose from the parties' revenue sharing agreement.  (*Id.*)  In Counts I and II of the Complaint, plaintiff alleged that defendant breached its contractual obligation to: (1) generate and remit to plaintiff a minimum amount of rental revenue related to the Sharp-x system; and (2) use its best efforts to promote the Sharp-x system. (*Id.* at ¶¶ 6,8, 10.)  In Count III, plaintiff claimed that defendant had accepted delivery of Sharp-x units for purchase, but failed to pay for the units.  (*Id.* at ¶¶  12-13.)   In Count IV, plaintiff sought enforcement of its contractual right to examine defendant's

2

books and records related to the parties' agreement. (*Id*. at ¶ 16.)

Defendant timely removed the action to this Court on the basis of diversity jurisdiction. (Notice of Removal [1].) After a contentious and protracted discovery period, the Court granted summary judgment to defendant on Counts I, II, and IV of the Complaint, and the parties reached an agreement settling Count III. (Orders [139] and [140].) Pursuant to the Court's summary judgment order and the parties' consent order, the clerk entered judgment in favor of defendant on Counts I, II, and IV, and dismissed Count III. (Judgment [144].) Plaintiff appealed the judgment to the Eleventh Circuit Court of Appeals. (Notice of Appeal [145].)

Following the clerk's entry of judgment, defendant submitted a bill of costs, a portion of which plaintiff moved to disallow, and a motion for attorney's fees. (Def.'s Bill of Costs [148] and Mot. for Att'y Fees [153]; Pl.'s Mot. to Disallow Costs [152].) Because the case was on appeal, the Court did not immediately rule on the parties' motions. (Order [167].)

On November 16, 2006, the Eleventh Circuit issued an Order affirming the Court's decision to grant summary judgment. (Order [166].) The parties subsequently renewed their motions concerning costs and attorney's fees, which are now before the Court. (Pl.'s Renewed Mot. to Disallow Costs [168] and Def.'s Mot. for Att'y Fees [169].)

3

AO 72A
(Rev.8/82)

## **DISCUSSION**

### I.   **Plaintiff's Motion to Disallow Costs**

Following the entry of judgment in favor of defendant, and pursuant to defendant's bill of costs, the clerk taxed costs against plaintiff in the amount of $23,956.74. (Def.'s Bill of Costs [148]; Entry of Costs [149].) Plaintiff contends that a portion of these costs are not properly taxable, or are not identified with sufficient particularity to determine whether they are taxable. (Def.'s Br. in Supp. of its Mot. to Disallow Costs [168] at 2.) Plaintiff seeks a reduction of defendant's costs in the amount of $12,326.20. (*Id.*)

Under Rule 54(d)(1) of the Federal Rules of Civil Procedure, costs "shall be allowed as of course to the prevailing party." FED. R. CIV. P. 54(d)(1). *See also E.E.O.C. v. W&O, Inc.,* 213 F.3d 600, 620 (11th Cir. 2000) (noting that prevailing parties are entitled to recover their costs under Rule 54(d)). But Rule 54(d) does not grant the Court unrestrained discretion to tax costs for every expense the prevailing party has seen fit to incur. (*Id.*) Rather, the Court may only tax items specifically authorized by 28 U.S.C. § 1920 and related statutes. (*Id.*) Those items include:

1)   Fees of the clerk and marshal;

2)   Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;

3)   Fees and disbursements for printing and witnesses;

4

4)      Fees for exemplification and copies of papers necessarily obtained for use in the case;

5)      Docket fees under [28 U.S.C. § 1923];

6)      Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under [28 U.S.C. § 1828].

28 U.S.C. § 1920.

Applying Rule 54(d) and § 1920, plaintiff concedes that defendant is entitled to costs in the amount of $11,630.54 for witness fees, fees for service of process, deposition costs, and filing fees. (Pl.'s Br. in Supp. of Mot. to Disallow [168] at Ex. A, p.3.) However, plaintiff requests that the Court deduct, from the remainder of defendant's request, $2,868.65 representing federal express, courier, telephone, overtime, facsimile, postage and mail, and research charges. (*Id.* at 3-4.) Plaintiff also requests that the Court disallow $8,718.12 in copying and printing charges. (*Id.* at 4-6.)

Defendant has not responded and does not appear to contest plaintiff's argument concerning federal express, courier, telephone, overtime, facsimile, postage and mail, and research charges. (*See generally* Def.'s Resp. to Pl.'s Mot. to Disallow Costs [176].) Moreover, these expenses are not specifically enumerated in § 1920 and are generally not taxable. *Duckworth v. Whisenant,* 97 F.3d 1393, 1399 (11th Cir. 1996)("costs such as general copying, computerized

5

legal research, postage, courthouse parking fees and expert witness fees . . . are clearly non-recoverable"). *See also Scelta v. Delicatessen Support Serv., Inc.,* 203 F.Supp. 2d 1328, 1339 (M.D. Fla. 2002)(disallowing costs for, among other items, facsimiles, couriers, express mail, computerized legal research, and search services). Plaintiff's motion to disallow these particular costs is therefore **GRANTED.**

As to copying and printing charges, such costs are taxable if they are "necessarily obtained for use in the case." *W&O,* 213 F.3d at 623. Accordingly, copies that are attributable to discovery are taxable, as are copies of "exhibits and documents filed in support of motions, as well as copies of pleadings, memoranda and motions themselves." *Fulton Fed. Sav. & Loan Ass'n of Atlanta v. Am. Ins. Co.,* 143 F.R.D. 292, 299 (N.D. Ga. 1991)(Forrester, J.). *See also Fressell v. AT&T Tech., Inc.,* 103 F.R.D. 111, 115-116 (N.D. Ga. 1984)(Vining, J.)("In identifying for the court the photocopying costs that are taxable under section 1920, the plaintiff may include charges attributable to discovery . . . [and] copies of pleadings, motions, and memoranda [that] were provided to [the] court"). Extra copies or copies prepared for the convenience of counsel are not taxable, however. *Fulton Fed.,* 143 F.R.D. at 299-300; *Fressell,* 103 F.R.D. at 116.

Defendant's bill of costs includes $6,994.12 for copying charges

6

paid to outside vendors utilized to copy documents produced during discovery. (Def.'s Resp. to Pl.'s Mot. to Disallow [176] at 3.) Plaintiff's motion to disallow these costs, which are clearly recoverable under § 1920(4), is **DENIED**.

In addition, defendant seeks to recover $2,142.30 for in-house copying costs incurred during the litigation. (*Id.* at 2.) Plaintiff filed this action in July, 2002. (Compl. [1].) Three years and over a hundred pleadings later, the clerk entered judgment in favor of defendant. (Clerk's Judgment [141].) During this time defendant made numerous filings, including a lengthy summary judgment motion supported by 250 pages of exhibits, a response to plaintiff's untimely motion to amend its complaint, and several motions for sanctions necessitated by plaintiff's inadequate discovery responses. (Def.'s Mot. for Summ. J. [106]; Def.'s Resp. to Pl.'s Mot. to Amend [74]; Def.'s Mots. for Sanctions [75], [115].)   Given the length of the litigation, and the number of pleadings and motions that were filed, it is reasonable to assume that all of defendant's in-house copying charges were necessarily incurred in the ordinary course of conducting the litigation.[1]   Accordingly, plaintiff's motion to disallow these costs is **DENIED**.

---

[1] In addition, Ernest Greer, the attorney primarily responsible for handling the litigation, certified that the charges were "reasonable, necessary, and appropriate." (Greer Aff. [148] at ¶ 5.)

7

Pursuant to the above discussion, the Court **GRANTS in part** and **DENIES in part** plaintiff's Motion to Disallow Costs [168]. Adding the costs that plaintiff concedes are recoverable to the photocopying charges that the Court finds to be taxable under § 1920, the Court concludes that defendant is entitled to **$20,766.92 in costs**.[2]

## II.   Defendant's Motion for Attorney's Fees

Defendant seeks reimbursement in the amount of $372,745.75 for attorney's fees incurred in defending this case.   (Greer Aff. [169] at ¶ 5.)   According to defendant, plaintiff's claims were patently frivolous from the outset of the litigation, and pursued for the sole purpose of coercing defendant into a settlement.   (Def.'s Br. in Supp. of its Mot. for Att'y Fees [169] at 1.)   Defendant also claims that plaintiff's "repeated discovery abuses" during the litigation constituted bad faith.   (*Id.* at 11-12.)   Defendant argues that it is entitled to recover attorney's fees as a result of plaintiff's: (1) filing a meritless lawsuit; and (2) engaging in bad faith during the course of the litigation.   (*Id.*)

---

[2]   Apparently plaintiff's calculation was inaccurate as to deposition costs, which amounted to $10,270.50 as opposed to $10,270.54.   (Def.'s Response to Pl.'s Mot. to Disallow Costs [176] at 1, n.1.)   The Court has used the $10,270.50 figure in its final calculation of taxable costs, resulting in a total of $20,766.92 as opposed to $20,766.96.

AO 72A
(Rev.8/82)

## A.    **Background**

As the Court has previously awarded defendant attorney's fees as a result of plaintiff's multiple discovery violations, it sets out the history of those requests and orders.  On April 23, 2003, the Court granted defendant's Motion to Compel Discovery and, finding that plaintiff's non-disclosure was not substantially justified, the Court also awarded costs and attorney's fees to the defendant, pursuant to FED. R. CIV. P. 37(a)(4) [48].  Thereafter, the defendant filed a Statement of Attorney's Fees and Costs [49], indicating that it had incurred $7,630.50 in attorney's fees and $83.72 in expenses in connection with the discovery dispute.  The plaintiff filed a motion for reconsideration [50], which the Court denied [63] and after which the Court issued an Order [64], directing the plaintiff to remit $7,714.22 to the defendant within thirty days.

On September 21, 2004, the Court was forced to issue another order [114] as a result of plaintiff's incomplete compliance with the Court's previous Order compelling plaintiff to comply with its discovery obligations.  The Court directed the plaintiff to produce all relevant documents within ten days, but declined to award sanctions against the plaintiff as the Court had neglected, in its earlier order, to put a deadline for the plaintiff to comply with discovery.  (*Id.* at 19.)  The Court noted, however, that unless plaintiff completely complied with the Court's previous Order

9

AO 72A
(Rev.8/82)

compelling plaintiff to disclose discoverable materials, the Court would consider dismissal of plaintiff's case. (*Id.* at 18.)  Finally, the Court denied without prejudice defendant's pending motion for summary judgment until the plaintiff had fully complied with its discovery obligations.  (*Id.* at 21.)

Thereafter, the defendant again filed a motion for sanctions [115] as a result of plaintiff's belated "dump" of voluminous documents in response to this Court's discovery orders.  The Court issued an Order [129] in which it declined to dismiss the plaintiff's case, but did preclude plaintiff from using any of the newly-disclosed documents to prove its case.  (*Id.* at 17.)  The Court did, however, order the plaintiff to pay defendant's reasonable expenses and attorney's fees associated with bringing the motion.  (*Id.* at 18.)  The Court further directed that any motion for summary judgment be filed by a specified deadline.  (*Id.*)

Thereafter, the defendant filed a memorandum [132] setting out its fees and expenses incurred in this second motion for sanctions. Specifically, defendant cited attorney's fees of $33,373 and $215.15 in expenses.  After that filing, the parties filed a pleading [137] indicating that the plaintiff had paid all fees and costs in connection with the Court's Order awarding such fees and costs to the defendant.

Thereafter, the Court reactivated defendant's motion for partial

10

summary judgment [130] and granted that motion [139].   Defendant then filed a motion for all attorney's fees incurred in defending the case [142], which motions were effectively stayed during the pendency of the plaintiff's appeal [167], and reactivated in February of this year [168, 169].   Likewise, reactivated and now considered was plaintiff's previous motion to disallow costs [168].

**B.   Defendant's Present Motion for Attorneys Fees Incurred in Defending Entire Case**

Under the American Rule, litigants in the United States typically bear responsibility for their own attorney's fees. *Chambers v. NASCO, Inc.,* 501 U.S. 32, 45 (1991).   *See also Pedraza v. United Guar. Corp.,* 313 F.3d 1323, 1331 (11th Cir. 2002) (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 257 (1975)).   Federal courts have the inherent power to assess attorney's fees against an opposing party or attorney in certain "narrowly defined" circumstances, including cases where "a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons."[3] *Chambers*, 501 U.S. at 45-46.   However, as the Supreme Court

---

[3]   Courts also have the inherent power to assess fees pursuant to the "common fund exception" and as a sanction for willful disobedience of a court order.   *Chambers,* 501 U.S. at 45.   But neither of those exceptions is relevant to this case.   In addition, Rule 11 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1927 provide for fee-shifting in certain circumstances.   But again, neither provision is applicable here.   (*See generally* Def.'s Mot. for Attorney's Fees [169].)

11

instructed in *Chambers*, inherent powers must be invoked with caution and "exercised with restraint and discretion." (*Id.* at 44, 50.)

Pursuant to the Supreme Court's directive in *Chambers*, federal courts typically only engage in fee-shifting in exceptional cases that involve clearly frivolous claims or particularly egregious conduct. *See Pedraza,* 313 F.3d at 1336 (explaining that "[a]n action is brought in bad faith when the claim is *entirely* without color and has been asserted wantonly, for purposes of harassment or delay, or for other improper reasons") (emphasis added). Plaintiff's conduct in this case does not meet this high standard.

Although plaintiff did not succeed on any of its claims, its Complaint was not frivolous. The gravamen of the Complaint, asserted in Count I, was that defendant breached a contractual obligation to generate and remit to plaintiff minimum monthly rental revenue related to Sharp-x sales. (Order [139] at 8.) In support of this argument, plaintiff cited Exhibit A to the parties' agreement, which listed revenue goals from August 2001 through July 2003 and provided that: "The following *shall* be the minimum monthly rental revenue to be generated by [defendant] under the Agreement." (*Id.* at 13 (emphasis added).) Given the seemingly mandatory language of Exhibit A, plaintiff's interpretation was potentially plausible, although it was not ultimately persuasive. *See Chambers,* 501 U.S. at 47 (explaining that a court's inherent power to impose attorney's fees

12

as a sanction is not so broad as to encompass "conduct which merely fails to meet a reasonableness standard") and *Pedraza,* 313 F.3d at 1336 ("Although the objectively unreasonable advancement of a claim warrants the imposition of statutorily-authorized attorney's fees . . . . it is insufficient to justify an analogous action pursuant to the court's inherent power.").

Neither was plaintiff's conduct sufficiently "wanton or vexatious" to justify fee-shifting. Defendant contends that plaintiff exhibited "bad faith" by failing to fully comply with its discovery obligations. (Def.'s Br. in Supp. of its Mot. for Att'y Fees [169] at 11-12.) Plaintiff's conduct during discovery, including its failure to produce documents that were responsive to defendant's request and its untimely interrogatory responses, was, indeed, burdensome to defendant and the Court. (*See* Order [129].) It resulted in several motions for sanctions and costs, two of which the Court granted. See Order of November 18, 2003 [64], awarding fees in the amount of $7,714.22 to defendant as a result of plaintiff's discovery violations and Order of April 21, 2005 [129] (granting defendant's motion for sanctions by precluding admission of certain evidence by plaintiff and by awarding attorney's fees and costs, which were determined to be approximately $33,000). See discussion *supra* at 9-10.

Plaintiff did not, however, exhibit the type of conduct that

13

justifies fee-shifting pursuant to the Court's inherent powers.[4]
*Compare Chambers,* 501 U.S. at 57 (upholding the district court's
decision to assess fees against a party who had: (1) attempted to
deprive the court of jurisdiction by acts of fraud; (2) filed false
and frivolous pleadings; and (3) attempted by other tactics of delay,
oppression, harassment, and massive expense to reduce his opponent to
"exhausted compliance."). *See also, Taylor,* 338 F.Supp. 2d at 1369
(declining to impose sanctions upon a litigant who had used
misleading language in a protective order).

In short, there are no grounds in this case for invoking the
Court's inherent power to assess attorney's fees against plaintiff.
Plaintiff's claims were not frivolous, and its conduct was not so
egregious as to justify an exception to the American Rule.  As to
plaintiff's discovery violations, the Court required it to pay costs
and fees for these violations.  Accordingly, defendant's present
motion for attorney's fees is **DENIED.**

### CONCLUSION

For the foregoing reasons, the Court **GRANTS in part** and **DENIES
in part** plaintiff's Motion to Disallow Costs [168] and **DENIES**

---

[4]  In fact, in its order addressing defendant's motion for
sanctions, the Court expressed uncertainty as to whether plaintiff's
conduct was "the result of willful disobedience or bad faith, as
opposed to plaintiff's counsel's lack of understanding of his
discovery obligations."  (Order [129] at 15.)

AO 72A
(Rev.8/82)

defendant's Motion for Attorney's Fees [169].

SO ORDERED, this ___4___ day of September, 2007.


_____
JULIE E. CARNES
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)